Almira LAHR, Respondent,

v.

**AMERICAN FAMILY MUTUAL INSUR-
ANCE COMPANY, a Wisconsin cor-
poration, Appellant.**

No. C5–96–8.

Court of Appeals of Minnesota.

July 30, 1996.

Dan T. Ryerson, Gislason, Martin & Varpness, P.A., Edina, for Respondent.

Mary M. Kruse, Kevin E. O'Connell, St. Paul, Thomas F. Ascher, Cosgrove Flynn & Gaskins, P.L.L.P., Minneapolis, for Appellant.

Considered and decided by PARKER, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

Appellant American Family Mutual Insurance Company (American) challenges the district court's award of underinsured motorist (UIM) benefits to respondent Almira Lahr.

## FACTS

This case arises out of a two-vehicle accident occurring on February 5, 1990. Lahr was a passenger in a vehicle driven by Elizabeth Peura that collided with a vehicle driven by Mary Kay Kivisto. American Family Mutual Insurance Company (American) insured Peura with a liability limit of $50,000 and a UIM limit of $50,000. American's policy defined "underinsured motor vehicle" to exclude vehicles owned by the insured Peura. Atlantic Mutual Insurance Company (Atlantic) insured Kivisto with a bodily injury liability limit of $100,000. Western National Mutual Insurance Company (Western) insured Lahr's vehicle (not involved in the accident) with a UIM limit of $100,000.

Lahr provided American with a *Schmidt v. Clothier* notice of her intention to settle bodily injury claims with Atlantic and thereafter

pursue UIM benefits. American declined to substitute its payment for the proposed settlements. In settlement of Lahr's bodily injury claims, American paid Lahr $50,000 under its liability coverage, and Atlantic paid Lahr $80,000 under its liability coverage. Lahr's own insurer, Western, paid her $35,500 for her UIM claim and loaned her an additional $49,500 that will only have to be repaid if Lahr succeeds in her UIM claim against American.

Lahr then sought a declaratory judgment against American for UIM benefits to the extent Kivisto was underinsured. The district court granted American's motion for summary judgment. The court concluded a passenger (Lahr) may not recover UIM benefits from the driver's (Peura's) insurer.

This court reversed summary judgment, concluding that a passenger injured in a multi-vehicle accident may recover UIM benefits from her driver's insurance if the other driver is underinsured. *Lahr v. American Family Mut. Ins. Co.*, 528 N.W.2d 257, 259–60 (Minn.App.1995) (*Lahr I* ). We thus remanded to the district court to determine whether Kivisto's vehicle was underinsured.

The case proceeded to jury trial where the jury established Lahr's damages at $290,000, and determined Peura was 90 percent negligent and Kivisto was 10 percent negligent. The district court then concluded Kivisto was underinsured because under the statute on joint and several liability, Kivisto could be responsible for four times her 10 percent share of the $290,000 in total damages (4 × $29,000 = $116,000). The court subtracted the $80,000 paid by Atlantic under the liability settlement from the $116,000 and awarded judgment on the UIM claim against American for $36,000 ($116,000 − $80,000 = $36,000). After costs and interest, judgment was entered in favor of Lahr for $44,881.31.

This appeal follows. Pursuant to settlement discussions, the parties waived issues related to computation of damages and collateral source offsets.

## ISSUE

Did the district court err by applying joint and several liability to a determination of whether Kivisto's vehicle was underinsured?

## ANALYSIS

■ American is liable for UIM benefits to Lahr only if Kivisto's vehicle is underinsured. This is an issue of law. A reviewing court is not bound by and need not give deference to a district court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

In *Lahr I*, we reversed summary judgment in favor of American because we concluded a passenger in a multi-vehicle accident may recover UIM benefits from her driver's insurer if the other driver is underinsured. 528 N.W.2d at 260. We based our decision both on an interpretation of the word "any" as used in Minnesota Statutes section 65B.49, subd. 4a, and on a determination that the rationale behind two supreme court cases, *Thommen v. Illinois Farmers Ins. Co.*, 437 N.W.2d 651, 653 (Minn.1989) and *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983), did not preclude a UIM claim by Lahr against American. *Id.* at 259–60. Thus, we allowed Lahr to proceed to trial against Peura's insurer American to determine if Kivisto's vehicle was underinsured. We stated, however,

[a]ctual recovery of UIM benefits from American will depend upon a determination of total damages and an apportionment of fault that renders Kivisto "underinsured" with respect to her share of liability.

*Id.* at 260. Further, in footnote 5 in *Lahr I*, we cautioned that following the apportionment of fault, application of joint and several liability might violate *Thommen. Id.* at 260 n. 5.

On remand, the jury apportioned fault, determined damages, and ultimately set Kivisto's liability at $29,000. The court, however, proceeded to inflate Kivisto's liability to $116,000 by applying the joint and several liability statute, and thereby concluded Kivisto was underinsured. *See* Minn.Stat. § 604.02, subd. 1 (1990) (under joint and several liability, a person whose fault is 15 percent or less is liable for a percentage of

the whole award no greater than four times the percentage of fault).

On appeal, American contends that because Kivisto's liability after apportionment of fault, $29,000, is less than Kivisto's liability policy limit of $100,000 (from which Atlantic settled with Lahr for $80,000), the Kivisto vehicle was not underinsured. American further argues that any application of joint and several liability to this case violates the well-established rule in *Thommen* that UIM coverage cannot be converted into third-party liability coverage. *See* 437 N.W.2d at 654.

Initially, we note that joint and several liability is a collection mechanism intended to assist a plaintiff in collecting a judgment by shifting onto liable defendants the burden of dividing and collecting payment. *See Erickson v. Hinckley Mun. Liquor Store,* 373 N.W.2d 318, 325–26 (Minn.App.1985) (legislative intent of joint and several liability statute is to provide full recovery). We agree with American that the Kivisto vehicle was not underinsured. There is nothing in the statute to indicate the legislature intended that joint and several liability be applied to inflate liability for purposes of determining the underinsured status of a vehicle. Indeed, the use of joint and several liability to determine the underinsured status of a vehicle would result in most drivers who are found to be at least 16 percent causally negligent being underinsured. *See* Minn.Stat. § 604.02, subd. 1 (a person who is more than 15 percent causally liable is jointly and severally liable for the whole award).

We also agree that the application of joint and several liability to these facts violates both *Thommen* and *Myers.* In *Myers,* State Farm insured Stein with both liability coverage and UIM coverage. 336 N.W.2d at 289. Myers, a passenger in the Stein vehicle, was fatally injured in a one-car accident. *Id.* Myers's heirs collected under Stein's liability policy and also attempted recovery under Stein's UIM policy. *Id.* Stein's UIM policy specifically excluded Stein's vehicle from being considered underinsured. *Id.* at 290. The supreme court upheld the UIM policy exclusion of Stein's vehicle, reasoning

> [t]o now collect further under the same insurer's underinsured motorist coverage *would be to convert the underinsured motorist coverage into third-party insurance* [.] * * * Stein's insurance policy is not designed to compensate Stein or his additional insureds from Stein's failure to purchase sufficient liability insurance.

*Id.* at 291 (emphasis added).

In *Thommen,* the supreme court reaffirmed its holding in *Myers* despite changes in UIM law. 437 N.W.2d at 654. *Thommen* involved a two-car accident where the driver of the car in which Thommen was riding was solely at fault. *Id.* at 652, 654 n. 3. Thommen sought UIM coverage from the driver's insurer despite a UIM policy exclusion similar to the one in *Myers* precluding the driver's vehicle from being considered underinsured. *Id.* at 652–53. The supreme court upheld the policy exclusion, concluding

> the rationale for the *Myers* decision is equally valid today: to hold the insurer liable to pay damages resulting from the negligent use of the insured motor vehicle pursuant to both the liability coverage and the UIM coverage is to convert the first-party UIM coverage into third-party insurance * * *.

*Id.* at 654.

In *Lahr I,* we further explained the policy underlying *Thommen* by stating

> *Thommen* prevents the conversion of first-party UIM coverage into third-party liability insurance; otherwise, the insured could purchase less expensive UIM coverage in lieu of additional liability coverage for herself.

528 N.W.2d at 259.

The jury here determined that Peura was 90 percent negligent and Kivisto was 10 percent negligent. Thus, the application of joint and several liability to make Kivisto's vehicle underinsured has the effect of shifting a portion of Peura's 90 percent liability onto Kivisto, and any UIM benefits recovered by Lahr would, in effect, be in lieu of Peura's inadequate liability coverage. The use of Peura's liability to trigger UIM coverage violates the underlying policy of *Myers* and *Thommen.*

Accordingly, the district court erred in applying joint and several liability.

We are not persuaded by Lahr's argument that, because Kivisto's tort liability could be subject to joint and several liability, joint and several liability applies in determining whether Kivisto was underinsured. Kivisto would be liable for more than her 10 percent share of Lahr's damages only if Lahr could not collect the judgment from Peura. Minn. Stat. § 604.02, subd. 2. This situation cannot occur here because Lahr has fully settled her liability claims against Peura and Kivisto.

In addition, the cases cited by Lahr, *Richards v. Milwaukee Ins. Co.*, 518 N.W.2d 26 (Minn.1994), and *Johnson v. American Family Mut. Ins. Co.*, 426 N.W.2d 419 (Minn. 1988), do not address the situation here, where a passenger is pursuing UIM benefits against her driver's insurer based on the other vehicle being underinsured. Although *Johnson* referred to joint and several liability in the context of a UIM claim, the supreme court decided *Johnson* based on a UIM statute that is fundamentally different from the current law. Indeed, the 1989 legislative changes to Minn.Stat. § 65B.49, subd. 4a overrule *Johnson*. Additionally, *Richards* fails to address joint and several liability or otherwise indicate joint and several liability should be applied to inflate liability and thereby make a vehicle underinsured. Finally, neither *Richards* nor *Johnson* implicates the *Thommen* prohibition concerning the conversion of first-party UIM coverage into third-party insurance.

## DECISION

The district court's judgment allowing Lahr's UIM claim against American is reversed because the court erred in applying joint and several liability in determining whether Kivisto's vehicle was underinsured.

**Reversed.**

PARKER, Judge (dissenting).

I respectfully dissent. Nothing in the joint and several liability statute or the UIM statute precludes the application of joint and several liability to a determination of whether a vehicle is underinsured. In fact, the 1989 legislative changes to Minn.Stat. § 65B.49, subd. 4a, indicate the focus of the UIM statute is providing the fullest possible compensation to an injured party. Applying joint and several liability here would serve this end by compensating Lahr for her damages as determined by a jury.

I acknowledge that joint and several liability has the effect of shifting Peura's liability onto Kivisto. But unlike in *Thommen* and *Myers*, which both involved a single at-fault driver, here we have multiple tortfeasors. Peura has no incentive to purchase cheaper UIM coverage in place of more expensive liability coverage based on another vehicle being underinsured. Therefore, the policy of *Thommen* and *Myers*, it seems, does not extend to these facts.

In *Johnson*, the supreme court indicated joint and several liability applies in the context of a UIM claim. 426 N.W.2d at 423. While the 1989 legislative changes to the UIM statute have altered the supreme court's conclusion in *Johnson*, *Johnson*'s reasoning on joint and several liability is still valid. As the supreme court made clear in *Richards*, a UIM claim looks to the damages the insured is "legally entitled to recover" from the tortfeasor. 518 N.W.2d at 28. Additionally, the term "actual damages" as used in the statutory definition of underinsured motor vehicle means the "total" liability of the tortfeasor. *Id.*

Here, the formula applied by the district court is precisely how Kivisto's total tort liability would be determined without regard to a UIM claim and without regard to the settlement posture of this case. Thus, in applying joint and several liability, Lahr would be legally entitled to recover from Kivisto four times Kivisto's percentage of fault in order to compensate Lahr's actual damages. Accordingly, I would affirm the district court and hold the Kivisto vehicle underinsured.